IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

MacKENZIE MORLEY,

        Plaintiff,

v.                                  CIVIL ACTION NO.  3:22-0375

ENERGY SERVICES OF AMERICA CORP.,
a West Virginia corporation, and
C.J. HUGHES CONSTRUCTION CO., INC.,
a domestic corporation and wholly owned
subsidiary of ESOA,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendants' Partial Motion to Dismiss Energy Services of America Corp. and Counts III and IV of the Amended Complaint. ECF No. 14. Plaintiff MacKenzie Morley opposes the motion. For the following reasons, the motion is **DENIED, in part,** and **GRANTED, in part.**

**I.
FACTUAL ALLEGATIONS**

In her Amended Complaint, Plaintiff states she was hired as Director of Marketing and Business Development by Defendant C.J. Hughes Construction Co., Inc. ("C.J. Hughes") on January 1, 2020. *Compl.* ¶6. Plaintiff alleges that C.J. Hughes is a wholly owned subsidiary of Defendant Energy Services of America ("ESOA"), and "ESOA oversees and manages . . . C.J. Hughes . . . [and] ESOA officers directly oversee and manage parts of Defendant C.J. Hughes[.]" *Id.* ¶3. In addition to the duties she performed for C.J. Hughes, Plaintiff asserts she also performed many duties for ESOA. Her duties to ESOA include:

>building, maintaining, and updating their website; drafting and completing the Investors Relation profile with Defendant ESOA Board members; making presentations before Defendants ESOA and [C.J. Hughes] boards; involved in strategy for Defendant ESOA to acquire West Virginia Pipeline, Tri-State Paving, and being involved in the meetings, introductions, and ultimate acquisitions of said companies; traveled with . . . Doug Reynolds, CEO of ESOA. At all times, she handled tasks for both Defendant ESOA and Defendant [C.J. Hughes], the management of which heavily overlaps in practice.

*Id*. ¶8.

During her employment, Plaintiff alleges that the President of C.J. Hughes, Charles "Chuck" Austin, has made a number of sexist and derogatory comments about her. For instance, Plaintiff states that he repeatedly told her he would never promote her because she is a woman, he falsely accused her of "sleeping with numerous men," he threatened to terminate her if she has had inappropriate relationships with customers or employees, and he said the problem with her is "what's between her legs." *Id*. ¶¶11, 13, 19 (internal quotation marks omitted). According to Plaintiff, Mr. Austin also commented to her:

>I wish you were 4'3" and 250 pounds so that you're not a distraction.
>
>You are a distraction, and I will not let you get in the way of productivity because of your looks.
>
>As long as I am President at CJ Hughes, I will never promote you. My successor can do that. I do not want to deal with the fallout that will take place when you are promoted.
>
>You need to prove yourself to be able to sit at the table with the big boys.
>
>You have my leadership team and customers by the balls and there is nothing I can do about it.

*Id*. ¶22 (internal quotation marks omitted). Plaintiff further claims that C.J. Hughes hired Kevin Sanders to report to her as a "Business Development Specialist," a less demanding job than hers,

but his salary was "at least $34,000 more than [her] initial base salary." *Id*. ¶14 (internal quotation marks omitted).

In addition, Plaintiff states that, when ESOA's Chief Operations Officer, Neil Riddle, was accused of sexually harassing other female employees, she was interviewed and provided text messages from Mr. Riddle as part of investigation. *Id*. ¶¶16, 17. Thereafter, Mr. Austin stated in front of her and other company officers that her cooperation is the reason "why you never hire a woman." *Id*. ¶18. Although the accusations against Mr. Riddle were substantiated, Mr. Austin demoted Plaintiff, took away some of her responsibilities, and told her to report to someone else. *Id*. ¶¶20, 21. Mr. Austin then purportedly threatened her by saying that, "[i]f you ever use any of this against me, I will move your house." *Id*. ¶23.

Plaintiff asserts she reported Mr. Austin's conduct to C.J. Hughes. The company responded by telling her that it "found no legal wrongdoing" on his part, but it said that she would no longer have to directly report to him. *Id*. ¶26 (internal quotation marks omitted). Plaintiff claims she also reported Mr. Austin's discriminatory and harassing acts to Mr. Reynolds, as CEO of ESOA. *Id.* ¶27. "He indicated that he would transfer her to work full time with ESOA and provide her with a raise equal to that of Kevin Sanders but never carried through on that promise." *Id.*

As a result of these actions, Plaintiff asserts four causes of action in her Amended Complaint. Count I is "Hostile Work Environment Based on Gender." Count II is for Retaliation for Reporting Improper/Illegal Workplace Activity." Count III is for "Outrage." Count IV is for "Negligent Infliction of Emotional Distress" ("NIED") In their motion, Defendants argue that

Defendant ESOA must be dismissed in its entirety under Rule 12(b)(6) of the Federal Rules of Civil Procedure because Plaintiff has failed to state a claim against it. Additionally, they contend Counts III and IV should be dismissed as they are barred by the immunity provisions in the West Virginia Workers' Compensation Act.

## II.
## STANDARD OF REVIEW

Pursuant to *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), courts must look for "plausibility" in the complaint. This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (internal quotation marks and citations omitted). Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id*. (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 558 (internal quotation marks and citations omitted).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained the requirements of Rule 8 and the "plausibility standard" in more detail. In *Iqbal*, the Supreme Court reiterated that Rule 8 does not demand "detailed factual allegations[.]" 556 U.S. at 678 (internal quotation marks and citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Whether a plausible claim is stated in a complaint requires

a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id*. at 679.

### III.
### DISCUSSION

#### A.
#### Whether Plaintiff Can Maintain
#### Any Cause of Action Against ESOA

Defendants argue that Plaintiff has failed to allege any facts in her Amended Complaint to support her claims against ESOA. The Amended Complaint provides Plaintiff was hired and employed by C.J. Hughes, she reported to Mr. Austin, Mr. Austin engaged in discriminatory acts, and C.J. Hughes' reaction to Mr. Austin's conduct was inadequate. Defendants assert there are no allegations suggesting ESOA created a hostile work environment or engaged in retaliation. Additionally, Defendants contend that Plaintiff's assertion that ESOA and C.J. Hughes heavily overlap is a legal conclusion that should not be afforded the presumption of truth. The Court finds, however, that Plaintiff's allegations go beyond Defendants' summation of the Amended Complaint.[1]

In her Amended Complaint, Plaintiff alleges more than simply that the management of the ESOA "heavily overlaps in practice" with C.J. Hughes. *Compl.* ¶8. She also states that C.J. Hughes is a wholly owned subsidiary of ESOA, and "ESOA oversees and manages" C.J. Hughes and "ESOA officers directly oversee and manage parts of Defendant C.J. Hughes[.]" *Id.* ¶3. She also explains that she performed a number of specific duties for ESOA, such as working on its

---

[1] Defendants point out Plaintiff alleges some facts in her Response that do not appear in her Amended Complaint. In making its decision, the Court limits its consideration to those allegations contained only within the Amended Complaint.

website, working on its Investor Relation profile, making presentations to its Board, and strategizing with it to acquire other companies. *Id.* ¶8. In fact, Plaintiff asserts there was such an overlap with her job duties that she was interviewed with regard to the sexual harassment investigation into Mr. Riddle, ESOA's Chief Operating Officer, and she was able to provide detailed text messages from Mr. Riddle. After she cooperated with the ESOA investigation, Mr. Austin made sexist comments about her, and she reported his behavior to Mr. Reynolds, as CEO of ESOA. In response, Mr. Reynolds falsely indicated he would transfer her to work full time for ESOA and raise her pay to be equal to Mr. Sanders.

Taking the totality of these allegations in the light most favorable to Plaintiff for purposes of a motion to dismiss, the Court finds that Plaintiff has plausibly alleged that the overlap between the two companies' business practices was so extensive and intertwined that they both controlled her employment and her working environment.[2] Therefore, the Court **DENIES** Defendants' motion to the extent they argue Plaintiff has failed to adequately allege any possible liability against ESOA.

---

[2] In their briefs, the parties argue over whether ESOA can be considered a joint or integrated employer. At this point in the proceedings, however, the Court need not resolve the *actual* relationship between ESOA and C.J. Hughes or the *actual* employment relationship between ESOA and Plaintiff. Instead, the Court focuses on whether Plaintiff has plausibly alleged those relationships exist, which the Court finds that she has. Additionally, the Court notes that the parties rely heavily upon the definition of an employer under federal law. As Plaintiff brought her action pursuant to diversity jurisdiction and her claims all arise under state law, the Court first must consider West Virginia's substantive law before turning to analogous federal definitions.

## B.
## Workers' Compensation Immunity
## as to Plaintiff's Claims of Outrage and NIED

Defendants next argue that Plaintiff's common law claims for Outrage[3] and NIED must be dismissed against both Defendants because the claims are barred by West Virginia's Workers' Compensation Act ("WCA"). Subject to certain limitations, the WCA provides that a participating employer "is not liable to respond in damages at common law or by statute for the injury . . . of any employee, however occurring[.]" W. Va. Code § 23-2-6, in part. The West Virginia Supreme Court has held that the immunity created by the WCA is "sweeping," and it protects employers "from common-law tort liability for negligently inflicted injuries." *Bias v. Eastern Assoc. Coal Corp.*, 640 S.E.2d 540, 544 (W. Va. 2006). Despite its broad protection, the West Virginia Supreme Court has recognized three narrow exceptions to immunity. One exception is "by defaulting in payments required by the Workers' Compensation Act or otherwise failing to be in compliance with the Act." Syl. Pt. 2, *id.* The second exception is "by acting with 'deliberate intention' to cause an employee's injury as set forth in W. Va. Code § 23-4-2(d)." *Id*. The third exception occurs "in such other circumstances where the Legislature has by statute expressly provided an employee a private remedy outside the workers' compensation system." *Id*. For instance, the court found immunity is not available to an employer that engages in "intentional actions, such as discriminatory practices as provided in . . . The West Virginia Human Rights Act, W. Va. Code § 5-11-1 *et seq.*" *Id.* at 544 (footnote omitted); *see also Messer v. Huntington*

---

[3]The tort of outrage is commonly known as intentional infliction of emotional distress. *Camden-Clark Mem'l Hosp. Corp. v. Nguyen*, 807 S.E.2d 747, 753 n.15 (W. Va. 2017).

*Anesthesia Group, Inc.*, 620 S.E.2d 144, 160 (W. Va. 2005) (recognizing the indignity of discrimination under the WVHRA is redressable separate and apart from the WCA).

In this case, Defendants do not argue that Plaintiff's statutory claims under the WVHRA are barred by immunity. They only argue they are immune from her common law claims of NIED and Outrage. Clearly, under *Bias*, Plaintiff's NIED claim is barred by immunity as it obviously is premised on negligence. Likewise, Plaintiff's claim for Outrage is barred unless it falls within the deliberate intent exception. To demonstrate deliberate intent, West Virginia Code § 23-4-2 provides, in part, that:

> the employer . . . acted with a consciously, subjectively and deliberately formed intention to produce the specific result of injury . . . to an employee. This standard requires a showing of an actual, specific intent and may not be satisfied by allegation or proof of: (i) Conduct which produces a result that was not specifically intended; (ii) conduct which constitutes negligence, no matter how gross or aggravated; or (iii) willful, wanton or reckless misconduct[.]

W. Va. Code Ann. § 23-4-2(d)(2)(A), in part. In Syllabus Point 9 of *Tolliver v. Kroger Co.*, 498 S.E.2d 702 (W. Va. 1997), the West Virginia Supreme Court held that, "[t]o properly plead a prima facie case . . . , the statute requires an employee set out *deliberate intention* allegations. Under the statute, *deliberate intention* allegations may only be satisfied where it is alleged an employer acted with a consciously, subjectively and deliberately formed intention to produce the specific result of injury." Syl. Pt. 9, *Tolliver* (italics original). Although a claim of "Outrage" is an intentional tort, merely pleading a claim for outrageous conduct is insufficient to avoid immunity. Rather, to allege deliberate intent, "the plaintiff must plead facts that suggest 'an actual, specific intent[.]'" *Councell v. Homer Laughlin China Co.*, 823 F. Supp.2d 370, 384 (N.D. W. Va. 2011) (quoting *Weirton*

*Health Partners, LLC v. Yates*, No. Civ. Act. No. 5:09-0040, 2010 WL 785647, at *6 (N.D. W. Va. Mar. 4, 2010); other citation and quotation marks omitted)).

Here, Plaintiff has alleged "Defendant's . . . actions were atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency" and "Defendant acted with the intent to inflict emotional distress and/or acted recklessly when it was certain or substantially certain emotional distress would result from its conduct." *Compl.* ¶¶58, 59. Although perhaps sufficient to plead a broad claim for outrage when combined with sufficient factual support, these identical allegations have been found insufficient to plead deliberate intent to overcome workers' compensation immunity. *See Fugate v. Frontier West Virginia, Inc.*, No. 2:17-CV-00559, 2017 WL 3065216, at *5 n.4 (S.D. W. Va. July 19, 2017) (finding the plaintiff's identical allegations were insufficient to state a plausible claim of deliberate intent);[4] *see also Councell*, 823 F. Supp.2d at 384 (finding that while the plaintiffs "plead the broad tort of intentional infliction of emotional distress, such a broad pleading of this intentional tort is insufficient to plead deliberate intention to cause injury"). Upon review, the Court agrees that Plaintiff's allegations here are inadequate to allege deliberate intent. Therefore, as to C.J. Hughes, it is entitled to immunity, and the Court **DISMISSES** Plaintiff's claims of Outrage and NIED against it.

Additionally, although the question of whether ESOA also employed Plaintiff is yet to be resolved, the Court finds that, regardless of the answer to that question, Plaintiff's claims for Outrage and NIED must be dismissed against ESOA. It is clear from the Amended Complaint

---

[4]The Court notes that one of the plaintiff's counsel in the *Fugate* case also is one of the counsel for Plaintiff in this case.

that these are work-place claims involving the conduct Plaintiff allegedly endured as an employee. If ESOA is found not to be her employer, then it cannot be liable for these employment-based claims. On the other hand, if ESOA is determined to be Plaintiff's employer, then, as with C.J. Hughes, it would be entitled to immunity under the WCA. Thus, regardless of its status, ESOA cannot be liable under Plaintiff's theories of Outrage and NIED, and the Court **DISMISSES** those claims against ESOA.

## IV.
## CONCLUSION

Accordingly, for the foregoing reasons, the Court **DENIES** Defendants' Partial Motion to Dismiss to the extent they argue Plaintiff has failed to adequately allege any possible liability on the part of ESOA, but it **GRANTS** their motion to dismiss Counts III and IV for Outrage and NIED as to both Defendants. Counts I and II shall remain pending.[5]

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

        ENTER:       May 3, 2023

        ROBERT C. CHAMBERS
        UNITED STATES DISTRICT JUDGE

---

[5]Defendants also argue that Plaintiff's continuous use of the singular "Defendant" makes it impossible for them to them to differentiate between Plaintiff's allegations as to ESOA and C.J. Hughes. The Court agrees that the Amended Complaint should be more precise in differentiating between Defendants. Nevertheless, when the Plaintiff's claims for Hostile Work Environment and Retaliation are considered in light of her "Allegations of Fact," the conduct attributable to each Defendant is sufficiently discernable to avoid dismissal.