IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**MACKENZIE MORLEY,**

    **Plaintiff,**

v.                                                                    Case No.:  3:22-cv-00375

**ENERGY SERVICE OF AMERICA
CORP., a West Virginia corporation,
and C.J HUGHES CONSTRUCTION
CO., INC., a domestic corporation and
wholly owned subsidiary of ESOA,**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER

Currently pending are Defendants' Motion to Compel Responses to Defendants' Second Set of Discovery Requests, (ECF No. 88), and Motion to Compel Defendant C.J. Hughes to Respond to Plaintiff's First Set of Interrogatories and Requests for Production, (ECF No. 92). The issues have been fully briefed by the parties and are ready for resolution. For the following reasons, Defendants' motion, (ECF No. 88), is **DENIED** as moot, and Plaintiff's motion, (ECF No. 92), is **GRANTED**. The parties shall bear their own attorneys' fees and costs associated with the motions.

**I.**     **Relevant Facts**

    *A. Second Amended Complaint*

Plaintiff worked for Defendant C.J. Hughes Construction Co., Inc. ("C.J. Hughes"), a subsidiary of Defendant Energy Services of America (collectively "Defendants"), from January 1, 2020, to June 23, 2023 as the Director of Marketing

1

and Business Development. (ECF No. 80 at 2, 3). She alleges that Defendants violated the West Virginia Human Rights Act and common law by creating and fostering a hostile work environment that favored men over women in compensation and advancement opportunities. (ECF No. 80 at 1 at 13-19). She asserts four specific claims: (1) hostile work environment based on gender, (2) retaliation for reporting improper/illegal workplace activity, (3) retaliation for filing this civil action, and (4) tortious interference with advantageous relations. (*Id.* at 13-19).

### B. Defendants' Motion to Compel

On May 19, 2023, Defendants served their second set of discovery requests on Plaintiff. (ECF No. 89 at 2). Plaintiff timely responded to the requests, but Defendants found the responses inadequate and requested supplementation on June 28, 2023. (*Id.* at 3). Specifically, Defendants asked Plaintiff to supplement her responses to identify any loans that she had sought since beginning employment with C.J. Hughes in January 2020 and produce the records that she used to apply for the loans; identify any child support or other monies received since beginning employment with C.J. Hughes in January 2020; identify the directors and officers with whom she communicated regarding this lawsuit or the allegations she raises in this lawsuit and produce such communications; and produce her 2022 tax return and monthly statements and records of debit cards, charge accounts, and credit cards since beginning employment with C.J. Hughes. (ECF No. 88-3 at 1-4).

Plaintiff emailed Defendants on June 30, 2023. (ECF No. 88-4). She doubted the relevance of her loan, child support, and credit card information to the issues in this case. (*Id.* at 1-2). She also noted that she had produced relevant financial information and her expert's report, which did not rely on loan, child support, or credit

card purchases in calculating her damages. (*Id.*). Plaintiff surmised that the requests were designed to harass, embarrass, and retaliate against her. (*Id.*). Nonetheless, she agreed to supplement her 2022 tax return and her response regarding communications with officers, which she mistakenly interpreted to only include board members. (*Id.*). Plaintiff found it "quite ironic" that Defendants sought supplementation when C.J. Hughes failed to answer her discovery requests. (*Id.* at 1-3).

In any event, Plaintiff requested a telephone conference to work out the issues. (*Id.* at 4). The parties met and conferred by telephone on July 11, 2023. (ECF No. 88-7 at 1). Defendants' counsel memorialized their discussion in an email the same day and asked for a stipulation to extend the motion to compel deadline. (*Id.* at 2). Plaintiff did not respond regarding a stipulation within two days, which was the day that Defendants requested a response. (*Id.* at 4). Thus, Defendants filed the motion to compel on the deadline imposed by the United States District Court for the Southern District of West Virginia Local Rules of Procedure, July 20, 2023. (*Id.*).[1]

Plaintiff supplemented her discovery responses on August 2, 2023. (ECF No. 104 at 1-2). Defendants concede that Plaintiff cured all remaining discovery deficiencies with that supplementation. (*Id.* at 1). However, they seek their attorneys' fees and costs associated with the motion to compel because the discovery was not provided until after the motion was filed. (*Id.* at 1).

### C. *Plaintiff's Motion to Compel*

On July 21, 2023, Plaintiff filed a motion to compel C.J. Hughes to respond to her discovery requests, which ask Defendant to identify the Tier 1 and 2 employees

---

[1] "Motions to compel or other motions in aid of discovery not filed within 30 days after the discovery response or disclosure requirement was due are waived." LR Civ P 37.1(c).

3

within the organization and produce offer letters, bonus history, and pay raises for members of leadership. (ECF No. 93 at 4-7). Defendant objected to the requests on various grounds, including that the information was not relevant to the claims or defenses in this action nor proportional to the needs of the case because Plaintiff did not assert a sex discrimination claim. (*Id.*). According to Defendant, comparator evidence is not relevant to Plaintiff's hostile work environment claim. (ECF No. 101 at 1). In reply, Plaintiff noted that she alleges in this action that Defendant fostered a male-dominated work environment that was hostile to women. (ECF No. 106 at 4). Therefore, Plaintiff seeks evidence that Defendant routinely treated men more favorably than women in terms of compensation, advancement, and work conditions in order to establish her hostile work environment claim. (*Id.* at 4).

## II. Relevant Law

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines the scope of discovery in this action. It states:

> [U]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "Relevancy under this rule has been broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party." *Becton, Dickinson & Co. v. BioMedomics, Inc.*, No. 5:20-CV-536-FL, 2021 WL 3864476, at *3 (E.D.N.C. Aug. 30, 2021) (citations omitted). Even if

seeking relevant information, the discovery request must be proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).

A party dissatisfied with a discovery response or lack of response can move for an order compelling disclosure or discovery after attempting to confer with the party that submitted the response or failed to respond. Fed. R. Civ. P. 37(a). Under the local rules of this Court, a motion to compel must be filed within 30 days of the discovery responses being due, or the motion is waived. L. R. Civ. P. 37.1(c). However, the 30-day deadline may be extended by the Court for good cause or by stipulation of the parties, so long as the extension does not interfere with the scheduling order. *Id.* In the event of a discovery dispute, the party resisting discovery, not the party seeking discovery, bears the burden of persuasion. *Tinsley v. OneWest Bank, FSB*, No. 3:13-CV-23241, 2014 WL 7005852, at *2 (S.D.W. Va. Dec. 10, 2014) (citations omitted). As such, conclusory and unsubstantiated allegations are simply insufficient to support discovery objections based on the grounds of annoyance, burdensomeness, oppression, or expense. *Id.*

If a motion to compel is granted or the requested discovery is provided after the motion was filed, the court must, after giving an opportunity to be heard, award the movant the reasonable expenses incurred in making the motion to compel. Fed. R. Civ. P. 37(a)(5)(A). However, the Court need not award expenses if (1) the movant filed the motion before attempting in good faith to obtain the discovery without court action, (2) the response or objection to the discovery request was "substantially justified," or (3) other circumstances make an award of expenses unjust. *Id.* A "party satisfies the substantially justified standard if there is a genuine dispute as to proper resolution or if a reasonable person could think that the failure to produce discovery is correct, that

5

is, if it has a reasonable basis in law and fact." *Lynn v. Monarch Recovery Mgmt., Inc.*, 285 F.R.D. 350, 365 (D. Md. 2012) (quoting *Decision Insights, Inc. v. Sentia Grp., Inc.*, 311 Fed. App'x. 586, 599 (4th Cir.2009)) (markings omitted); *see also Burkett*, 244 F.R.D. at 330 (citing *Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d* § 2288 (1994) ("Making a motion, or opposing a motion, is 'substantially justified' if the motion raised an issue about which reasonable people could genuinely differ on whether a party was bound to comply with a discovery rule.")).

### III. Discussion

#### A. *Defendants' Motion to Compel*

As noted, the alleged discovery deficiencies identified in Defendants' motion to compel are moot due to Plaintiff's supplemental responses. (ECF No. 104 at 1). However, Defendants seek fees and costs associated with the motion because the information was not provided until they sought court intervention. (*Id.* at 2). The Court finds that, in this case, there was a legitimate dispute concerning some of the discovery requests, as clearly expressed in Plaintiff's response to Defendants' letter seeking supplementation. (ECF No. 88-4). Plaintiff reasonably believed that information concerning her loans, child support, and credit cards[2] was not relevant to the lawsuit because her expert did not rely on any of that information in calculating her damages, and she produced other financial information. (ECF No. 88-4).

As to her 2022 tax return and communications with officers of the company,

---

[2] For clarification, defense counsel essentially stated to Plaintiff's counsel in correspondence dated June 28, 2023 that the Court's April Order made Plaintiff's credit card receipts relevant and discoverable. (ECF No. 88-3 at 3). While it is true that the undersigned suggested Plaintiff review her credit card receipts in the hope that she might find some records documenting time she spent on leave from work— for instance, on vacation—that in no way transformed **all of her credit card receipts** into discoverable materials. To be clear, the Court would not have found a request for all credit card receipts to be relevant or proportional to the needs of the case.

Plaintiff readily agreed to supplement the information. (ECF No. 88-4 at 1-2). She was communicative and cooperative throughout the discovery dispute. (ECF Nos. 88-4, 88-7). By Defendants' account, Plaintiff's full and complete responses to the discovery requests that prompted this motion to compel were received 48 days after the responses were due and 18 days after Defendants filed this motion to compel. (ECF Nos. 89 at 2 n.1, 104 at 1-2).[3] While the Court in no way condones Plaintiff's delay in providing some information, there is an absence of any significant prejudice to Defendants, and there was clear intent on Plaintiff's part to cooperate in discovery. While the late responses arguably precluded Defendants from serving any follow-up written discovery, this was Defendants' second set of discovery requests, and the deadline to complete depositions does not conclude until September 11, 2023. (ECF No. 32 at 1). There is no indication that Defendants were thwarted from obtaining any specific information because Plaintiff's responses were late. All information has now been received.

Further, as explained below regarding Plaintiff's motion to compel, Defendants' discovery responses were likewise deficient, arguably more so than Plaintiff's. Attorneys' fees are not appropriate in every instance that a motion to compel is filed; the Court must consider what is "just" under the circumstances. In cases such as this one, where the parties have a history of conferring, granting extensions, compromising, and cooperating, the deadlines imposed by the rules often have the unintended and unfortunate consequence of compelling the filing of discovery motions when they otherwise would not have been filed. In those circumstances, discovery is often

---

[3] Defendants assert that, although Plaintiff's supplemental responses were supposedly served via e-mail on August 2, 2023, they were actually received a week later in the mail on August 7, 2023. (ECF No. 104 at 2). The responses were due on June 20, 2023. (ECF No. 89 at 2 n.1).

provided after the motion to compel is filed because the responding party would rather move the litigation forward, despite the party's continued objections to the discovery requests, than mire the case down in a thicket of senseless bickering. The chilling effect of repeated sanctions on parties' willingness to supplement their responses and cooperate to resolve discovery disputes after the filing of such a motion actually defeats the ends of justice. For all of the above reasons, the Court finds that Plaintiff's failure to answer the requested discovery was substantially justified and other factors argue against awarding attorneys' fees associated with Defendants' motion to compel, (ECF No. 88).

### B. *Plaintiff's Motion to Compel*

Plaintiff moves to compel discovery responses from Defendant C.J. Hughes concerning how its top employees were classified and compensated.

#### 1. **Interrogatory Nos. 15 and 16**

Plaintiff asks C.J. Hughes to identify all "Tier 1" and "Tier 2" classified employees. (ECF No. 93 at 4). Plaintiff was evidently a Tier 2 employee, and she aims to solicit evidence that women were treated less favorably in compensation and advancement opportunities to support her hostile work environment claim. (ECF Nos. 93 at 4, 106 at 3). Defendant argues that this information should not be compelled because Plaintiff does not allege discriminatory treatment between herself and Tier 1 employees, or even herself and Tier 2 employees, other than a certain male individual who was disclosed. (ECF No. 101 at 7). Further, Defendant claims that the information sought by Plaintiff is irrelevant because it is publicly available on C.J. Hughes's website; Plaintiff elicited testimony from various individuals that she was the only female management employee during her tenure with the company; and Defendant

admits that it has not employed any females in executive management positions since Plaintiff's termination. (*Id.* at 8). In reply, Plaintiff disputes that she has all of the necessary information and that the identities of the Tier I employees are publicly available. (ECF No. 106 at 3).

Regarding the relevance of the information, Plaintiff alleges a sexual harassment and hostile work environment claim under West Virginia law. (ECF No. 80 at 13). "To establish a claim for sexual harassment under the West Virginia Human Rights Act, W. Va. Code § 5–11–1, *et seq.,* based upon a hostile or abusive work environment, a plaintiff-employee must prove that (1) the subject conduct was unwelcome; (2) it was based on the sex of the plaintiff; (3) it was sufficiently severe or pervasive to alter the plaintiff's conditions of employment and create an abusive work environment; and (4) it was imputable on some factual basis to the employer." *Egan v. Steel of W. Virginia, Inc.*, No. 15-0226, 2016 WL 765771, at *5 (W. Va. Feb. 26, 2016). While a hostile work environment claim does have different elements from an employment discrimination claim,[4] as Defendant identifies, there is overlap in the evidence used to support both causes of action.

Namely, a plaintiff may allege, as she does here, that the work environment was hostile because it favored men over women in compensation and advancement opportunities. The key inquiry in establishing a prima facie case of sexual harassment based upon a hostile work environment is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other

---

[4] In order to make a prima facie case of employment discrimination under the Human Rights Act, W. Va. Code § 5-11-1 *et seq.* (1979), a plaintiff must offer proof of the following: (1) that the plaintiff is a member of a protected class; (2) that the employer made an adverse decision concerning the plaintiff; (3) but for the plaintiff's protected status, the adverse decision would not have been made. *Burke v. Wetzel Cnty. Comm'n*, 240 W. Va. 709, 722, 815 S.E.2d 520, 533 (2018).

sex are not exposed. *Egan v. Steel of W. Virginia, Inc.*, No. 15-0226, 2016 WL 765771, at \*5 (W. Va. Feb. 26, 2016); *Hanlon v. Chambers,* 195 W. Va. 99, 107 (1995). Plaintiff alleges that she was subjected to disparaging comments, told that she would not be promoted, and paid less than males because she is female. (ECF No. 80 at 1, 4-6, 14).

Therefore, the information sought is clearly relevant to Plaintiff's claims. For instance, if the Tier 1 employees were male, paid more, and given other more favorable conditions of employment than Plaintiff, a Tier 2 employee, it can support Plaintiff's hostile work environment claim. In fact, Plaintiff's subsequent interrogatory, Interrogatory No. 17, sought further information on that point. Plaintiff asked Defendant to identify all disparities in pay, employment benefits, vacation time, and paid time off between Tier 1 and 2 employees. (ECF No. 92-3 at 9). Defendant produced a "Paid Time Off Program Overview" in response. (*Id.*). The paid time off information is, in all practical sense, useless if Defendant bars Plaintiff from collecting evidence to identify whether the Tier 1 and 2 employees were male or female.

As to Defendant's other arguments that the information has already been provided in discovery or is publicly available, it points to the fact that it identified in response to Interrogatory No. 20 the "current executives and directors of C.J. Hughes," which it refers to in its response brief as the "management employees." (ECF No. 92-3 at 11-12, 101 at 8). As noted, Defendant states that it does not dispute that it has not employed any females in executive management positions since Plaintiff's termination, and Plaintiff elicited testimony from various individuals that Plaintiff was the only female management employee at C.J. Hughes during her tenure with the company. (ECF No. 101 at 8). Yet, Matt Hill testified that Kayla McGinnis was a female "management" employee and Plaintiff was the only female "director." (ECF No. 101-4).

10

The terminology is not entirely clear, but it is apparent that **none** of the testimony or other information that Defendant lists clearly identifies the "Tier 1" and "Tier 2" classified employees. While some of the "management employees" may fall within one classification, Defendant does not explain it. These are straightforward interrogatories, which merely required Defendant to submit a list of Tier 1 and 2 employees. Defendant points the Court and Plaintiff in various directions for the information rather than submitting a simple list of individuals.

For all of the above reasons, the Court **GRANTS** Plaintiff's motion to compel regarding Interrogatory Nos. 15 and 16 and **ORDERS** Defendant to provide complete responses **within seven (7) days** of this Order.

### 2. Request for Production Nos. 3, 6, 16, 17, and 21

Plaintiff also asks Defendant to produce the offer letters, bonus history, and pay raises for each member of Senior Leadership and Leadership. (ECF No. 93 at 4-8). Defendant claims that the requests are vague and confusing because the terms "Senior Leadership" and "Leadership" are not defined. (ECF No. 101 at 10). However, Plaintiff has unambiguously expressed that she only seeks information concerning the individuals listed on C.J. Hughes's website. (ECF Nos. 93 at 12, 106 at 3). On the "About Us" section of the website, there is a "Leadership" tab which lists eight members of "Executive Management," including Doug Reynolds, Chuck Austin, Sean Hieronimus, Matt Hill, David Combs, James Redmond, Troy Taylor, and Doug Harrah. *See* https://www.cjhughes.com/about-us/leadership. Therefore, Defendant's objection that the request is vague and confusing is without merit.

Similarly, Defendant argues that the requests are overly broad and unduly burdensome because they are unlimited in time and seek information that predates

Plaintiff's employment. (ECF No. 101 at 10, 14). This argument resisting discovery is unavailing because Plaintiff specified that she only seeks information about the eight individuals currently listed on C.J. Hughes's website, and she intends to show a years-long pattern and practice of C.J. Hughes fostering a male-dominated work environment hostile to women. Moreover, Defendant never supplied any support for its "overly broad" and "overly burdensome" arguments. A party moving to resist discovery on the grounds of burdensomeness and oppression must do more to carry its burden than make conclusory and unsubstantiated allegations. *Convertino v. United States Department of Justice*, 565 F. Supp.2d 10, 14 (D.D.C. 2008) (holding that the court will only consider an unduly burdensome objection when the objecting party demonstrates how discovery is overly broad, burdensome, and oppressive by submitting affidavits or other evidence revealing the nature of the burden). Nothing in the record before the Court establishes, for example, that the information requested is voluminous, difficult to locate or retrieve, is prepared more frequently than annually, or spans more than a couple of decades of employment.

Defendant further objects that the information sought is not relevant because Plaintiff alleges retaliation and hostile work environment, not failure to promote, hire, or pay her equally to the executive management employees. (ECF No. 101 at 10). As discussed above, Defendant misunderstands Plaintiff's hostile work environment claim. Plaintiff alleges that she was subjected to sexual harassment and her work environment was hostile because it favored men over women in compensation and advancement opportunities. (ECF No. 80 at 1). Offer letters, pay raises, and bonus history for the exclusively male members of executive management appear to be directly relevant to that claim. Defendant argues that Plaintiff never alleged pay

disparity between herself and other executive management employees. (ECF No. 101 at 10). However, Plaintiff alleged, as stated above, that men received more favorable compensation and jobs than women at C.J. Hughes and that the President of C.J. Hughes, Chuck Austin, repeatedly told her that he would not promote her because she was a woman. (ECF No. 80 at 1, 4, 6). Therefore, the information sought is indeed relevant to Plaintiff's claim.

Defendant contends that, even if comparator evidence is relevant to the hostile work environment claim, the members of the executive management are not proper comparators because they were not similarly situated to Plaintiff. (ECF No. 101 at 11). Defendant notes that Plaintiff had no experience in the pipeline industry and had a distinct job of Director of Marketing and Business Development. (*Id.*). The Court agrees with that contention to an extent. Doug Reynolds, the CEO of C.J. Hughes's parent company, is not a reasonable comparator. However, the other members of the executive management team could conceivably be similarly situated to Plaintiff. The Court appreciates Defendant's argument that the other members of executive leadership have years of experience in the industry unlike Plaintiff. (ECF No. 101 at 12, 12 n.11). While that may be a defense to Plaintiff's claim that she was subjected to a hostile work environment and given less favorable conditions of employment because she was female, it is not sufficient to prohibit discovery in this case. Relevance is broadly construed to include "any possibility that the information sought may be relevant to the claim or defense of any party." *BioMedomics*, 2021 WL 3864476, at *3. As limited to the seven managers, directors, and other members of executive leadership listed on C.J. Hughes's website, excluding Doug Reynolds, Plaintiff's discovery request meets that relevancy standard, and is proportional to the needs of the case. Fed. R. Civ.

13

P. 26(b)(1).

The Court **GRANTS** Plaintiff's motion to compel **Request for Production Nos. 3, 6, 16, 17, and 21** and **ORDERS** Defendant to produce the offer letters, bonus history, and pay raises for Chuck Austin, Sean Hieronimus, Matt Hill, David Combs, James Redmond, Troy Taylor, and Doug Harrah **within seven (7) days** of this Order.

Regarding Plaintiff's request for fees associated with the motion to compel, the undersigned finds that, although the motion is granted, there was a legitimate dispute concerning the requests at issue. Plaintiff did not appear to assert a stand-alone sex discrimination claim. Thus, Defendant did not appreciate the relevance of the information concerning male employees at C.J. Hughes as part of Plaintiff's hostile work environment claim. The failure to provide discovery was substantially justified and other factors argue against awarding attorneys' fees in this instance.

The Clerk is directed to provide a copy of this Order to counsel of record.

**ENTERED:** August 24, 2023

Cheryl A. Eifert
United States Magistrate Judge